UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN M. NELDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:17-CV-304-PPS-MGG |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

John M. Neldon appeals the Social Security Administration's decision to deny his application for Social Security Disability Insurance Benefits. An administrative law judge found that Neldon was not disabled within the meaning of the Social Security Act. Neldon raises five main arguments as to why he thinks the ALJ's decision was contrary to law and unsupported by sufficient evidence. After review of these arguments, the ALJ's decision, and the underlying record, I conclude that Neldon's arguments are themselves without merit and unsupported by the evidence. Therefore I will affirm the ALJ's decision.

### **Background**

In his application for benefits, Neldon alleged a disability onset date of March 1, 2007.[1] [A.R. 29.] At the time of his reconsideration hearing, Neldon was 52 years old and

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry #12. Citations are to the page number in the lower right hand corner of the A.R.

alleged he was disabled primarily on account of pain in his feet and back as a result of various conditions.[2] Prior to his alleged disability, Neldon mostly worked as an electrician within the construction industry and as an HVAC installer. [A.R. 31.]

In the written decision denying benefits, the ALJ followed the familiar five-step process used to evaluate claims for disability. At step one, the ALJ determined that in some years since the alleged disability onset date, Neldon had engaged in substantial gainful activity, earning annual wages in excess of $34,000 for three consecutive years. [A.R. 21.] Despite this, the ALJ continued his review of Neldon's applications for all years. At step two, the ALJ determined the following severe impairments: "degenerative disc disease of the spine, bilateral plantar fasciitis, biceps tendon repair on the right, right shoulder degenerative joint disease and right rotator cuff repair." [A.R. 21-22.] The ALJ found at step three that while these impairments were severe, they did not meet or equal any of the applicable social security listings. [A.R. 22.]

At step four, the ALJ assessed Neldon's residual functional capacity ("RFC") and found that Neldon could not perform any of his past relevant work as either an electrician or HVAC installer. [A.R. 32.] The RFC determination was that Neldon was limited to light work, subject to several other restrictions, including limitations in standing, overhead lifting, as well no climbing of ladders, ropes or scaffolds. [A.R. 23.] Consequently at step five, the ALJ determined that there existed jobs in significant

---

[2] A more detailed account of Neldon's medical history is contained with the ALJ's written decision. [*See* A.R. 21-31.]

2

numbers in the national economy that Neldon could perform. [A.R. 32.] Specifically, the ALJ found that Neldon could perform the job of school bus monitor and thus that Neldon was not disabled. [A.R. 33.]

## Legal Standard

At the outset, it is imperative to note that, as a district court judge, I may not make a determination as to whether or not Mr. Neldon is disabled. That's a decision for the Social Security Administration to make. My job is to review the ALJ's ruling to determine whether or not it complies with the applicable standards and regulations. I will affirm the ALJ's decision if his factual determinations are supported by substantial evidence and are not contrary to law. *See* 42 U.S.C. §405(g). "When reviewing for substantial evidence, we do not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (citation omitted). "Because the Commissioner is responsible for weighing the evidence, resolving conflicts and making independent findings of fact, this Court may not decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled." *Powers v. Apfel*, 207 F.3d 431, 434–35 (7th Cir. 2000) (internal citations omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, [I] must affirm the ALJ's decision denying benefits." *Schmidt*, 496 F.3d at 842 (quoting *Books v. Chater*, 91 F.3d 972, 978 (7th Cir.1996)).

**Discussion**

Neldon's first argument is that the ALJ erred at step two of the process by failing to consider his obesity as part of determining whether he met any of the listed criteria for disability. The issues concerning Neldon's obesity seemingly come out of the blue. His obesity was never even discussed at the hearing before the ALJ despite the fact that Neldon was represented by counsel at the hearing. In all events, the argument is without merit.

It is true that Neldon had an abnormal BMI as noted in his medical records. [*E.g.*, A.R. 802, 815, 818, 822, 825, 826, 829, 932, 1140.] But as the Commissioner persuasively argues, none of those records, or the medical opinion evidence, noted that Neldon's obesity or BMI were a contributing factor to Neldon's limitations or alleged disability. What's more, the ALJ appears to have been aware of, and at a minimum indirectly considered, Neldon's BMI and related obesity because Neldon's doctors were certainly aware of his obesity and the ALJ considered the opinions of Neldon's doctors. That is enough in these circumstances. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (affirming denial of benefits and finding no error where "although the ALJ did not explicitly consider [plaintiff's] obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions").

Furthermore, given that there does not appear to be any indication that obesity was contributing factor to Neldon's functional limitations, and Neldon offers nothing more than speculation to the contrary, the ALJ's failure to explicitly address Neldon's

BMI in his written opinion would be at most a harmless error as there does not appear to be any basis for Neldon's BMI to affect the step two analysis. *See Skarbek*, 390 F.3d at 504 ("[A]ny remand for explicit consideration of [the plaintiff's] obesity would not affect the outcome of this case").

Neldon's second argument challenges the ALJ's determination at step three that he did not meet any of the social security listings for disability or their medical equivalent. Neldon concedes that he did not meet Listings 1.02 or 1.04 but argues it was reversible error by the ALJ to fail to determine "the critical issue of medical equivalence." [DE 15 at 22.] Again, Neldon focuses on what he says was the ALJ's inadequate consideration of his obesity. Neldon further argues that the ALJ was required to obtain additional medical expert testimony to evaluate Neldon on this issue. Neither of these arguments warrants a reversal of the ALJ's decision.

Concerning additional medical expert testimony on the issue of equivalence, Neldon misstates what was required of the ALJ. An ALJ is only required to obtain a medical expert opinion when the ALJ is "finding that the claimant's impairment(s) medically equals a listing." *See* Hearings, Appeals, and Litigation Law Manuel (HALLEX) I-2-5-34, 1994 WL 637370. Here, the ALJ found that Neldon did *not* medically equal a listing. The ALJ was thus not required to obtain additional medical expert testimony to support that conclusion beyond the reasons stated in the ALJ's opinion, including his consideration of the two state agency medical consultants who reviewed and determined that Neldon did not meet any of the listings or their medical

equivalence. *Sutherlin v. Colvin*, No. 1:13-CV-01603-SEB, 2015 WL 1046101, at *5 (S.D. Ind. Mar. 10, 2015) (finding two state agency opinions determining that claimant did not meet any listing to "satisfy the requirement for expert medical opinion on the issue of medical equivalence").

Furthermore, Neldon's argument that an additional medical expert was required based upon the need to consider additional evidence is unpersuasive because he "fails to show the relevance of any later-submitted evidence or medical opinion to the criteria of Listing 12.02 and the subject of medical equivalence" beyond simply repeating his belief that his obesity should have been more heavily weighed. *Sutherlin*, 2015 WL 1046101, at *5; *id.* ("Although the ALJ wrote that the state-agency physicians had not reviewed the evidence submitted after the reconsideration decision, his statement was in the context determining [the claimant's] RFC, after he had already made his step-three Listings determination.").

Neldon's third argument challenges the ALJ's RFC determination, arguing that it was flawed for three reasons. First, he reiterates his arguments as to obesity that I have found to be unpersuasive for the reasons discussed above. Second, Neldon argues that the ALJ gave insufficient weight to the medical opinion of Dr. Christopher M. Annis, an anesthesiologist and Neldon's treating physician. Third, and related, Neldon argues that the ALJ gave improper weight to a functional capacity evaluation which had been ordered by Dr. Annis and was part of Dr. Annis's opinions.

Before I address these arguments, I think it is helpful to properly frame the evidence which the ALJ analyzed and is being discussed here. Dr. Annis did not testify at the hearing and did not issue a single opinion. Instead, there are four temporally distinct pieces of opinion evidence: (1) an August 28, 2013 letter on Neldon's behalf [A.R. 518]; (2) a March 18, 2014 letter to Neldon's lawyer [A.R. 795-796]; (3) a followup April 21, 2014 letter to Neldon's lawyer [A.R. 794]; and (4) the transcript of a "dialogue" between Dr. Annis and Neldon's lawyer which took place on November 6, 2015 [A.R. 1247-1252]. The ALJ reviewed, considered, and gave varying degrees of weight to the opinions of Dr. Annis contained within these various pieces of evidence.

"[A] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) supported by medical findings; and (2) consistent with substantial evidence in the record." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ may reject the opinions of a treating physician (like Dr. Annis) "if the opinion 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as [the ALJ] minimally articulates his reasons for crediting or rejecting evidence of disability.'" *Schmidt*, 496 F.3d at 842 (citation omitted). I will address each piece of Dr. Annis's opinion evidence in turn.

The August 28, 2013 letter from Dr. Annis indicated that he had been seeing Neldon for several months for pain management by that point in time and that Neldon's pain was "preventing him from being able to work any meaningful amount of

7

time in the capacity he once was due to an inability to tolerate the pain. He cannot tolerate standing on a ladder nor can he tolerate some of the positions his prior job required." [A.R. 518.] While the ALJ stated that he gave this letter only "some weight," the ALJ generally agreed with Dr. Annis's opinion contained within this letter. Namely the ALJ agreed that Neldon could not return to work *as an electrician*, his prior job, which is classified as medium work, or that he could not tolerate standing on a ladder. [A.R. 29.]

The ALJ considered the March 18 and April 21, 2014 letters together, presumably given their close proximity in time. The March 18, 2014 letter again notes that in Dr. Annis's opinion, Neldon's "main complaint has been bilateral feet [pain]" and that the associated pain "has limited his ability to perform his job as an electrician, which requires climbing ladders on a regular basis." [A.R. 795.] The same letter noted that Neldon "has had difficulty with his right shoulder and had a debridement of a rotator cuff with subacromial decompression to help alleviate some of his problem. This has healed, and he continues to convalesce from this." [*Id.*] The April 21, 2014 letter contains a short assertion, without additional support, that Neldon "would miss 3 or more days in a month because of his underlying conditions." [A.R. 794.]

The ALJ stated that "the opinion [within the April 2014 letter to the lawyer] is vague and does not indicate why the claimant would miss work, such as pain." [A.R. 29.] This is certainly true. And what the ALJ found most concerning was the fact that Dr. Annis had issued a report regarding Neldon's capacity to work just a month earlier

and it didn't say a thing about absenteeism. [*Id.*] But more importantly, because Dr. Annis did not support the opinion with objective medical evidence or discussion of Neldon's symptoms, it was within the ALJ's power to give this letter minimal weight. *Powers*, 207 F.3d at 435 ("The hearing officer was within his discretion to reject that opinion as conclusory and unsupported by the evidence.").

The ALJ further discounted the April 21, 2014 letter and its conclusions because it was unsupported by a February 2014 functional capacity evaluation that Dr. Annis ordered with another provider because Dr. Annis was "not qualified to assess [Neldon's] capacity in this manner." [A.R. 795.] This evaluation, which included observations and tests of Neldon's ability, was given "some weight" by the ALJ and its conclusion was that Neldon could perform work within the light range category. [A.R. 30, 796.] Importantly, nothing within the functional capacity evaluation stated that Neldon's limitations would cause absenteeism. [A.R. 795-96.]

The November 6, 2015 transcript was given little weight by the ALJ because he found it was partially unsupported and contradicted in other parts by objective medical evidence. [A.R. 30.] In the transcript, Dr. Annis opined that Neldon was sedentary, could only stand for two hours a day during an eight-hour work day in 20 minute or less intervals, lift up to 10 pounds, use his hands occasionally and again stated that Neldon would miss at least three days of work a month. [A.R. 1248-51.] In particular, the ALJ noted that Neldon's treating podiatrist had found his EMG and MRI to be "relatively unremarkable and would not account for his symptoms." [A.R. 30.] And

while Dr. Annis opined that Neldon was sedentary, the ALJ found this contradicted by the extensive activities Neldon testified he engaged in over an extensive period of time (*e.g.*, house renovations, wood splitting, digging in a garden, travel, etc.). [*Id.*] As for the limitation that Neldon could only lift 10 pounds, it too was contradicted by Neldon's own treatment notes from December 29, 2014 which "noted the claimant had normal strength in the upper extremities." [*Id.*]

Concerning Neldon's back and foot pain which Dr. Annis opined would cause absenteeism of three or more days a month, the ALJ here found the opinion contradicted by other evidence on several bases and accordingly gave it little weight. [A.R. 30.] Specifically, the ALJ found Dr. Annis's opinion was undercut by the facts of Neldon not seeing his podiatrist for over 15 months, his podiatrist's comments concerning Neldon's EMG and MRI, as well as the podiatrist's own notes that conservative treatment in the form of orthotics had helped with Neldon's foot pain. [*Id.*] Furthermore, Dr. Annis himself had noted that Neldon's back pain appeared to be "more of a ligamentous or muscle irritation issue as opposed to one related to his underlying degenerative changes." [*Id.*] Neldon may disagree with these conclusions, but he offers no law or particular facts which the ALJ ignored in reaching them which would warrant a reversal in this case.

Thus, it is apparent to me that the ALJ took a meaningful review of Dr. Annis' opinion and credited it when it was supported by evidence and rejected those opinions which were either unsupported by or contradicted by other objective evidence. *See*

10

*Brown v. Colvin*, No. 3:13-cv-352-CAN, 2014 WL 3579686, at *7 (N.D. Ind. July 18, 2014). This is precisely the ALJ's role in the disability determination and the ALJ does not appear to have made any decisions which were not supported by substantial evidence. *See Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010).

Fourth, Neldon argues that the ALJ improperly discounted his credibility as to his claims of pain. The ALJ found Neldon's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely credible" and not "credible to the extent alleged." [A.R. 24, 30.] My review of the ALJ's credibility determination is especially deferential because while I am reviewing a cold record on appeal, the ALJ at the hearing has an opportunity to examine and question the witness and evaluate his or her credibility. Put simply, "the ALJ is in the best position to observe witnesses" and I "will reverse an ALJ's credibility determination only if the claimant can show it was patently wrong." *Schmidt*, 496 F.3d at 843 (citations omitted). Neldon has not made such a showing in this instance.

Neldon argues that his situation is analogous to *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004). In that case, the Seventh Circuit reversed an ALJ's ruling because of the ALJ's "perverse" focus on the fact the claimant testified that she could at times walk up to two miles as a basis to undermine her credibility as to her pain. *Carradine*, 460 F.3d at 756. Critically, however, the claimant's walks in the *Carradine* case were "one of the treatments that doctors have prescribed for [claimant's] pain, and she

does not claim to be paralyzed, we cannot see how her being able to walk two miles is inconsistent with her suffering severe pain." *Id.* at 755.

Neldon, on the other hand, testified that he engaged in much more than sporadic walks. Following his alleged onset date, Neldon rehabbed a house, was splitting wood, moving mattresses, traveling out of state and gardening, in addition to routine activities, such as household chores, shopping, cooking and cleaning. [A.R. 30-31.] The ALJ also noted that Neldon would drive on occasion, including to his hearing, [A.R. 31]—a fact which is important for the step five determination concerning possible jobs for Neldon, discussed below. The ALJ also noted that Neldon had substantial earnings for several years after his alleged disability onset date of March 1, 2007. [A.R. 19.] "[H]e earned $36,455.63 in 2008, $41,445.41 in 2009, $37,972.51 in 2010, $34,862.82 in 2011" and diminishing amounts the following two years. [A.R. 30.] The ALJ also pointed to objective medical evidence which appeared to contradict Neldon's claims of pain including EMG and MRI scans which were "relatively unremarkable and would not account for his symptoms." [A.R. 31.] Thus, it was the ALJ's prerogative to partially discount Neldon's claims of disabling pain throughout the period of alleged disability based upon substantial evidence in the record.

At bottom, the ALJ did not find Neldon to be perfectly fit, functioning without any limitation as Neldon seems to suggest or entirely disbelieve that he was without pain. Indeed, the opposite is true. The ALJ noted many limitations Neldon had when he

made his RFC determination, but simply not enough limitations so as to be considered disabled for the present purposes. [*See* A.R. 23.]

Fifth, Neldon challenges the ALJ's determination that he could work as a school bus monitor, one of the three jobs that the Vocational Expert (VE) testified that a person with Neldon's limitations could perform. Here, the ALJ considered the VE's testimony that Neldon could perform three different jobs: parking lot attendant, attendant arcade, and school bus monitor. The ALJ found that the first two jobs were not appropriate given Neldon's limitations of use of his upper extremities. [A.R. 33.] But that isn't the case with a school bus monitor, which does not require frequent use of the upper extremities. [*Id.*] Neldon argues that the VE's testimony (and thus the finding that Neldon could work as school bus monitor) should be either accepted in full by the ALJ or disregarded entirely. But this misstates both the role of the VE and the ALJ. "[A] vocational expert is not a required or even essential part of a disability benefits hearing. The decision whether to employ the services of a vocational expert is entirely within the discretion of the ALJ." *King v. Barnhart*, 66 F. App'x 65, 70 (7th Cir. 2003) (quoting *Ehrhart v. Secr'y of Health and Human Servs.*, 969 F.2d 534, 540 (7th Cir.1992)). A VE is simply another piece of evidence the ALJ weighs in making his determination.

Finally, Neldon makes an argument that the Dictionary of Occupational Titles published by the Department of Labor is factually incorrect, as well as outdated, and therefore should be disregarded. Neldon takes issue with the job of school bus monitor because according to him it is "common knowledge" that the job of school bus monitor

13

requires the ability to withstand heavy vibrations. [DE 15 at 34.] This argument is easily disposed of, as vibration limitations were not part of the RFC determination, nor has Neldon argued they should have been. What's more, the Dictionary of Occupational Titles notes that vibrations are not present with the job of school bus monitor. *See* DOT No. 372.667-042, 1991 673102. And to the extent Neldon may now be arguing after the fact that limitations as to riding in a vehicle should be part of his RFC determination, such an argument is undercut by the fact that Neldon testified that he drives himself places, including for over an hour to his hearing with the ALJ. [A.R. 31.]

While Neldon's assertions as to the currentness of the Dictionary of Occupational Titles may be true (I have no idea), the Social Security Administration and its regulations recognize it as a main source in the list of job publications used in making disability determinations. *See* 20 C.F.R. § 404.1566(d)(1). So for better or worse, it's what we have to work with in determining available jobs. Thus, Neldon's "argument is without merit and can, therefore, be addressed in short order. The law is abundantly clear that, in making a step five determination, the ALJ is permitted to take administrative notice of the DOT and rely upon information contained therein." *Lane v. Astrue*, No. 1:10-CV-28 JD, 2011 WL 3348095, at *13 (N.D. Ind. Aug. 3, 2011). Perhaps the volume should be updated or replaced, but that is a decision for the Social Security Administration or Congress, not a district court judge reviewing a denial of benefits.

14

**Conclusion**

The final decision of the Commissioner of Social Security denying plaintiff John M. Neldon's application for Social Security Disability Insurance Benefits is AFFIRMED.

SO ORDERED on September 14, 2018.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT